JAMES CHUNG, ESQ.
43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Eastern District of New York

Case No.:

KBH SPORTS CLUB LLC. and DAVID CHUNG, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Class Action Complaint

AMERICAN ZURICH INSURANCE CO.,

Defendant.

Plaintiffs KBH SPORTS CLUB LLC. and DAVID CHUNG ("Plaintiffs" or the "insured" herein), individually and on behalf of all similarly situated gyms, health clubs, health & fitness centers and other businesses bring this Class Action Complaint against AMERICAN ZURICH INSURANCE COMPANY., ("Zurich," the "insurer" or "Defendant" hereon), and on the basis of personal knowledge, information and belief, and investigation of counsels, allege as follows:

**NATURE OF THE ACTION**

1. This is a class action on behalf of Plaintiffs seeking remedy for wrongful denial

of insurance claims submitted to Defendant insurance company.

2. Plaintiffs purchased an all-risk commercial insurance policy from Defendant to protect from unexpected events. Plaintiffs made claims for coverage under the insurance policy expecting Defendant to indemnify and compensate for the recent losses incurred.

3. In a swift reaction, Defendant denied and refused to indemnify Plaintiffs for the losses.

4. The claim denial took less time than a "knee jerk" reaction since the denial letters were, probably, a standard form which were pre-written even prior to submission of the claims.

5. Defendant summarily, uniformly and consistently, rejected all claims across-the-board on substantively same or similar insurance policies held by Plaintiffs and the proposed members of the class, ("Blanket Rejection" hereon).

6. These Blanket Rejections were unjustified, unreasonable and without basis.

7. Plaintiff further seeks remedy for Defendant's unfair business practice of unjustly profiting and retaining excessive premiums.

8. Recent developments, including business suspensions and business interruptions, has substantially reduced the risks associated with the commercial insurance. Yet, Defendant overcharged and continues to overcharge and collect excessive premiums.

9. The current premium does not reflect the changed circumstances.

10. Nor does the current premium take into account the existing business climate.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA"). The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and

costs, and there are more than 100 putative class members. Plaintiffs, as well as members of the proposed class, are citizens of a state different from Defendant.

12. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omission, and acts giving rise to the claim occurred in this District where Defendant distributed, marketed, advertised, and sold the insurance policy at issue throughout New York and New Jersey.

13. Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue because Plaintiffs and a substantial portion of putative class members are residents of this District and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

14. This Court has personal jurisdiction over Defendant because it is authorized to do business and does business in New York and New Jersey, has marketed, advertised and made sales in New York and New Jersey, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## FACTUAL ALLEGATIONS

**COVID-19 and the Pandemic**

15. Coronavirus disease 2019 (COVID-19) is a contagious respiratory and vascular disease caused by severe acute respiratory syndrome coronavirus2 (SARS-2-CoV-2).

16. COVID-19 mainly spreads from symptomatic and asymptomatic people through the air, primarily by small droplets or aerosols, as an infected person breathes, coughs, sneezes or speaks. An infected person remains infectious for 10 – 14 days.

17. The World Health Organization (the "WHO") declared COVID-19 a Public

Health Emergency of International Concern (PHEIC).   On March 11, 2020, the WHO declared COVID-19 a pandemic.

18. As of early November 2020, 10.1 million Americans were infected with COVID-19 resulting in more than 238,000 deaths.

19. In order to prevent the spread of COVID-19, authorities worldwide have responded by implementing travel restrictions, lockdowns and business closures. The response has caused global social and economic disruption never seen before in most people's lifetime.

**New York & New Jersey Business Closure Orders**

20. Concerned with the rising spread of COVID-19, New York and New Jersey governors executed Executive Orders.

21. In New York, Governor Cuomo signed Executive Order No. 202.3 (the Business Closure Order" hereon) on March 7, 2020, directing closure of certain retail businesses. The closure included a separate directive for "gym, fitness centers, classes and movies theatres to cease operation on March 16, 2020 until further notice."

22. A few days later, Governor Cuomo signed the "New York State on PAUSE" Executive Order No. 202.6 with a new directive for all "non-essential" business to close statewide.

23. New Jersey soon followed suit with Governor Murphy signing Executive No. 107 on March 21, 2020, directing the temporary closure of all "non-essential" retail businesses.

24. The Business Closure Order was lifted in New Jersey on August 27, 2020 after Governor Murphy signed an Executive Order No. 181.   The order permitted re-opening of gym, health clubs and fitness centers on September 1, 2020.   However, the businesses were to open at only 25% of full capacity.

25. The Business Closure Order was lifted in New York City on August 31, 2020 when

Mayor de Blasio signed an Emergency Executive Order No 144. The directive permitted the re-opening of gyms, health clubs and fitness centers on September 2, 2020 at 33 % of maximum capacity.

26. Both states mandated stringent safety guidelines for businesses to re-open including social distancing and mask or face covering requirements.

**Zurich Insurance Policy**

27. Plaintiffs and the proposed class members obtained an "all risk" commercial insurance policy ("Policy" hereon), including but not limited to, a Building and Personal Property Coverage Form (CP 00 10 10 12) and Business Income (And Extra Expense) Coverage Form (CP 00 30 10 12), ("BIF" hereon).

28. The forms and endorsements in the policy are materially and substantially the same as the policies issued to the members of the proposed class.

29. The "all risk" policy is a type of insurance coverage which covers all risks or loss except for risks that are specifically excluded. For instance, if the policy excludes earthquakes and military actions, all other perils are covered.

30. The "all risk" coverage contrast from a "named peril policy." In a "named peril policy," the coverage is limited to losses that are specifically listed. For example, if the policy includes risks associated with earthquakes and the military actions, only those two risks will be covered.

31. Under BIF, Defendant agreed to indemnify and compensate for the "loss or damage caused by or result from a Covered Causes of Loss," (the "Covered Loss" hereon). The Covered Causes of Loss is enumerated in "Causes of Loss – Special Form," (CP 10 30 09 17), ("CLF" hereon).

32. The CLF, in pertinent part, provides as follows:

**A. Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss mean direct physical loss unless the loss is excluded or limited in this policy.

33. The Policy did not directly exclude or limit coverage for losses resulting from "Business Closure Order."

34. Furthermore, the insurer did not exclude or limit coverage from pandemic, epidemic or communicable disease or anything alike.[1]

35. The Policy further provides additional coverages for an interruption to business caused by "civil authority," BIF A.5. This section states that the insurer "will pay for the actual loss of Business Income sustained and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises."

36. The BIF provides coverage for different type of losses, including but not limited to, the following; a. Net income that would have been earned or incurred; b. Continuing normal operating expenses incurred, including payroll; and c. Business income other than "Rental Value."

37. These losses were to be paid to Plaintiff that occurred due to the "suspension" of the normal operations and during the period of restoration. The BIF also covers "extra expenses" incurred during the "period of restoration." The "extra expenses" are the "necessary expenses that would not have been incurred if there had been no direct physical loss or damage to the property."

---

[1] "Fitness and Wellness Professional Liability Endorsement" at A.2.s. excludes communicable disease, however, that endorsement is irrelevant for the purpose of this case.

6

38.     Plaintiffs are entitled to indemnification and compensation for all losses under the Policy.

**Wrongful Denial of Plaintiffs' Insurance Claim**

39.     In compliance with the Business Closure Order, Plaintiffs temporarily suspended the business on or about March 16, 2020.

40.     Plaintiffs submitted a claim to Defendant insurance company following the Business Closure Order requesting coverage for the Covered Loss pursuant to the policies.

41.     Defendant denied coverage for the Covered Loss, asserting the following:

   a. virus exclusion

   b. that Plaintiffs had not "sustained a physical loss or damage to the property"

   c. that the civil authority did not prohibit access to the property.

42.     The claims denial based on "virus exclusion" is erroneously applied.   The actual cause of Plaintiffs' Covered Loss was the COVID-19 pandemic and the resulting Business Closure.

43.     Plaintiffs' losses were not caused by a "virus" or any requirement to remove the virus contamination from the insured premises.

44.     The actual cause of Plaintiffs' Covered Loss was the Business Closure Order to prevent the spread of COVID-19 in the future.   No COVID-19 was found in, on or around the Plaintiffs' properties.

45.     The denial based on "no physical loss or damage to the property" is also mistakenly applied.   Defendant seems to be using "direct physical loss" and "physical loss or damage to property" interchangeably.   Those two terms appear in the same paragraph in the claim denial letter.

7

46. First, the pandemic and the resulting Business Closure Order prevented Plaintiffs from the use of the premises which is equivalent to "physical loss" or "damage to property." The functionality of the premises became non-existent.

47. The New York City government supports the proposition that a pandemic causes a loss and/or damage to property. The Emergency Executive Order No. 100 dated March 16, 2020 contains the following:

> "WHEREAS, this order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage."[2]

48. The "propensity of the virus to spread person to person" refers to the pandemic. The executive order further recognizes that the pandemic is a physical occurrence that causes "property loss and damage."

49. Second, the Policy fails to provide the definition of "direct physical loss" or "no physical loss or damage to the property." The Defendant's glossary of definitions in CLF fails to provide any guidance (CLF G. Definitions). Defendant also fails to provide the definition of the term in the BIF (BIF F. Definitions) or the BP (BP H. Definitions).

50. Therefore, the term "direct physical loss" and "physical loss or damage to the property," must be deciphered utilizing other parts of the Policy.

51. Commercial General Liability Coverage Form (CG 00 01 04 13, Section V. Definitions. 17. B. "Property damage" means), provides some guidance. "Property damage" is defined as the "loss of use of tangible property that is not injured." "Property damage" appears to have the same meaning as "damage to property."

---

[2] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf

52. Property damage includes the inability to "use" the property. The loss of use of the premises, building and equipment is synonymous with "loss of use of tangible property." The word "direct" is not a qualifying word for "damage to the property."

53. Due to the Business Closure Order, Plaintiffs lost the "use" of the insured property, a Covered Loss.

54. In regards to "direct physical loss," the Business Closure Order and the pandemic directly affected physical use and the functionality of the insured property. The loss of use of the premises is a physical loss as opposed to items like computer data, customer list, accounting, which is not a physical loss.

55. As a matter of fact, the Policy even covers indirect physical loss. BIF A.5.a. covers indirect loss due to "action by civil authority." The Policy under "civil authority," in pertinent part, states that "when a Covered Cause of Loss causes damage to property *other than* property at the described premises, we will pay..."

56. The "damage to property other than property at the described premises," depicts the loss to other property that causes *indirect* physical loss or damage to the insured property. The loss is *indirect* because the loss first occurs at the property that belongs to "other than the insured."

57. Plaintiffs have suffered a direct physical loss and damage to their property because they have been unable to use the property for the intended commercial purpose.

58. Although satisfaction of one of the two terms is necessary for coverage, Plaintiffs qualify for compensation based on both "direct physical loss" and "damaged to property."

59. Lastly, the contradictions and ambiguity in the insurance policies are interpreted against the insurers.

60. The denial base on "civil authority" was also wrongly applied. Plaintiffs maintain

that action by civil authority denied access to the property thereby prohibiting the use of the same. Access to Plaintiffs' property has been limited, restricted and prohibited by Business Closure Order and the pandemic.   No one was allowed to enter the property, including the customers and employees during the crisis.

61.     Furthermore, the "civil authority" portion of the Policy is an additional coverage that cannot be utilized to limit or exclude the Covered Loss.

62.     Defendant denied Plaintiffs' claim based on other reasons.   However, those reasons are catchall phrases that would deny coverage for all claims including routine coverage such as fire or other foreseeable destruction.   Further, those rejections are based on one phrase or sentence and in the wrong part of the heading.

63.     Plaintiffs suffered loss of business income that Plaintiffs reasonably would have expected, but for, the interruption required by the Business Closure Orders resulting from the pandemic, the "Covered Loss" under CLF.

64.     A declaratory judgment determining that the "all risk" policy," and the "Loss of Income & Extra Expense Coverage" provided by Defendant applies to suspension, restoration, and interruption of operations resulting from the pandemic and action by civil authorities is necessary to prevent Plaintiffs from denied critical coverage which was bargained for.

**Rejection of Request for Refund of Excessive Premium and Rejection of Request for Discount on Future Premiums**

65.     After rejection of the claim, Plaintiffs contacted the insurance broker to salvage refund of the insurance premium for the business suspension period and partial operation period. Plaintiff also wanted discounts on future premiums during the business interruption period.

66.     In another "knee jerk reaction," Plaintiffs' request for refund/reduction in premium

was rebuffed by the broker. Reason for the refusal was because the "dark properties" or "vacant properties" fetch higher premium than businesses that are in operation.

67. The broker is apparently misinformed. Plaintiffs' business is not "dark" or "vacant."

68. A "dark property" or "vacant property" is a building where a landlord is unable to find a tenant. Plaintiffs' business is experiencing a period of temporary suspension, justifying lower premium payments.

69. Plaintiffs' request for refund/discount on premium is not unreasonable under the changed circumstances.

70. Plaintiffs temporarily suspended operation on or about March 16, 2020. Plaintiffs were able to re-open the business on or about September 1, 2020 after the Business Closure Order was partially lifted. Plaintiffs business was restored to 25% of maximum capacity pursuant to the permitted re-opening guideline. Plaintiffs' business continues to operate at 25% capacity.

71. In the interim, the insurer's exposure to risk of loss was substantially reduced during the Business Closure Order. Defendant's exposure to risk was reduced in claims such as slip and fall, employee misconduct and professional liability.

72. Plaintiffs paid full premium for the aforementioned business suspension period.

73. Plaintiff continues to pay the pre-pandemic premium during the re-opening period. Defendant graciously accepted the payments without objection.

74. Therefore, the premium for the suspended business operation period must be calculated and adjusted accordingly. The premium for the business interruption period (partial re-opening) must be calculated and adjusted.

75. The request for reduction in premium is consistent with development in the

insurance industry shortly after the pandemic outbreak. AllState, Geico and other insurance companies have taken upon themselves to reduce the insurance rates.[3] The reasoning behind the discount is the reduction in risk of loss. Since drivers are driving less due to the "Stay at Home Order," the accident rate is decrease thereby justifying the reduction in premium.

76. Further supporting Plaintiffs' position is that insurer did not incorporate or contemplate that the majority of businesses would cease to operate for a prolonged period of time. The premium was set prior to the pandemic and without the knowledge of effect on the businesses. Defendant has billed and collected excessive premium.

77. Defendant continues to charge and retain the premium based on the pre-pandemic business operations and associated risks. This has resulted in a "windfall" for the Defendant and an unfair premium payment for the Plaintiffs.

## PARTIES

78. Plaintiff KBH Sports Club LLC. is a New Jersey limited liability company with its principal place of business located at Voorhees, New Jersey, Camden County.

79. KBH Sports Club LLC. is wholly owned by Plaintiff David Chung. Plaintiff Chung is a citizen of the State of New York and resides in Staten Island New York, Richmond County.

80. The pandemic and the resulting Business Closure Order had a profound negative impact on Plaintiffs' once thriving business.

81. The Business Closure Order halted all of Plaintiff's business activities.

82. Unlike similar businesses that continued to charge membership fees after the Business Closure Order, Plaintiff ceased all billing of the membership fees.

---

[3] https://www.natlawreview.com/article/due-to-covid-19-your-car-insurance-company-refunding-you-money

83. Most painful for Plaintiffs was the fact that they had to lay-off all employees who relied on Plaintiffs for their income.

84. Plaintiffs business continues to be affected with the limited re-opening. Without the insurance coverage, Plaintiff stands to suffer financially for many years to come.

85. Defendant American Zurich Insurance Company is a corporation organized under the laws of Illinois with corporate address of 1299 Zurich Way, Schaumburg, IL 60196.

## CLASS ACTION ALLEGATIONS

86. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3) ("the Class").

87. The proposed class consists of: All gyms, health clubs, health & fitness centers and other similarly situated businesses in the United States and its territories or possessions whose claims were denied by Defendant as set forth in the Complaint; and All gyms, health clubs, health & fitness centers and other similarly situated businesses in the United States and its territories or possession who over-paid insurance premium to Defendant as more fully set forth herein.

88. Plaintiffs also brings this suit on behalf of sub-classes consisting of insured whose claims were denied by Defendant in New York and New Jersey during the proposed class period and/or over-paid the insurance premium.

89. The members of the class are so numerous that joinder is impracticable.

90. Plaintiffs' claims are typical of the claims of the entire class.

91. Plaintiffs will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

92. Plaintiffs have no interest antagonistic to those of other class members.

93. Plaintiffs are committed to the vigorous prosecution of this action and has retained

counsel experienced in class action litigation.

94. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class, including, but not limited to:

a. Whether the "all risk" policy cover losses resulting from the COVID-19 pandemic;

b. Whether the Policy cover losses resulting from non-essential Business Closure Orders;

c. Whether the Policy cover losses from action by civil authority denying access to the premises;

d. Whether Defendant wrongfully denied coverage on the submitted claims;

e. Whether Defendant breached its policy by denying coverage on the COVID-19 pandemic related losses;

f. Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendant's denial of submitted claims;

g. Whether Plaintiffs are entitled to refund of premium during the business suspension and the business interruption period.

h. Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained funds, restitution to, or other remedies for the benefit of the Class;

i. Whether Plaintiffs and members of the Class are entitled to equitable relief and prospective declaratory judgment; and

j. Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the

societal interest in punishment and deterrence, and the amount of such damages and/or the multiplier to the actual or potential harm to the Class.

95. Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.

96. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.

97. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

98. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

## COUNT I

## DECLARATORY JUDGMENT

99. Plaintiffs incorporate by reference all preceding paragraphs.

100. An insurance coverage must be afforded to Plaintiffs for the Covered Loss under a number of provisions under Defendant's Policy.

101. An actual controversy has arisen between Plaintiffs and Defendant concerning the parties' rights and obligations under the Policy.

102. On March 2020, Plaintiffs submitted its claims to Defendant. Defendant has denied the coverage without factual or legal basis.

103. Defendant is in breach of an enforceable contract by refusing to provide coverage under the Policy.

104. No valid exclusions or limitations exist to deny coverage to Plaintiffs' claim.

105. Defendant breached the policy in the following respects:

  a. Plaintiffs and the class have suffered losses due to COVID-19 pandemic which is not excluded or limited by the Policy.

  b. Plaintiffs and the Class suffered losses due to Business Closure Order which is not excluded or limited by the Policy.

  c. Plaintiffs and the Class suffered losses due to action by civil authority which is an additional coverage under the Policy.

  d. Defendant is obligated to indemnify and compensate Plaintiffs and the class for those losses.

  e. Defendant has failed to indemnify and pay Plaintiffs and the class for claimed losses.

106. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, permits this Court to declare the rights and other legal relations of the parties.

107. Plaintiffs seek a declaration parties' respective rights and obligations under the policy. Plaintiffs request the Court to declare Defendant's conduct unlawful and in material breach of the Policy to prevent future controversies.

## COUNT II

## BREACH OF CONTRACT

108. Plaintiffs incorporate by reference all preceding paragraphs.

109. Plaintiffs and the class purchased the insurance policies from Defendant.

110. The policies are valid and enforceable contracts. The polices are in full force and effect.

111. Defendant is obligated to insure, indemnify and compensate Plaintiffs for losses arising out from the policies. Plaintiffs have sustained losses covered by the policy.

112. Defendant breached its contractual obligation and unjustly refused to pay claim for losses incurred.

113. Defendant is legally bound by the contract to pay all damages caused by the breach of contract.

114. As a direct and proximate cause of Defendant's breach, Plaintiffs and the class have sustained damages.

## COUNT III

## UNJUST ENRICHMENT

### Partial Refund of Paid Premiums

115. Plaintiffs incorporate by reference all preceding paragraphs.

116. Plaintiffs and the Class conferred a benefit on Defendant in the form of monies paid for a full insurance coverage.

117. Defendant has knowledge of these benefits. Defendant accepted and retained the benefits of the full insurance premium payments.

118. As a result of the pandemic, the business operations of Plaintiffs and the Class have substantially decreased or non-existent, lowering Defendant's exposure to risk.

119. As a result of the Business Closure Order, the business operations of Plaintiffs and the Class have substantially decreased or non-existent, reducing Defendant's exposure to risk.

120. Defendant has continued to charge and collect excessively unfair premiums. Defendant has failed and refused to voluntarily return the same.

121. Because Defendant did not provide the full pre-pandemic insurance coverage, it

would inequitable for the Defendant to retain them without refunding the value thereof.

122. Defendant has been unjustly enriched, warranting disgorgement of excessive premiums paid for which Plaintiffs and the Class did not receive benefit.

## COUNT IV

## MONEY HAD AND RECEIVED

### Partial Refund of Paid Premiums

123. Plaintiffs incorporate by reference all preceding paragraphs.

124. Defendant received money in the form of insurance premium intended to fully cover and indemnify Plaintiff for covered losses.

125. The paid premium was not used for the full benefit of Plaintiffs and the Class. Defendant has not refunded the wrongfully obtained money to Plaintiffs and the Class.

126. Defendant continues to charge full premium while providing only part of the pre-pandemic risk coverage.

127. Plaintiffs demand partial return of the premium paid and restore Plaintiffs to its original position.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class, pray for judgment as follows:

A. Certifying the proposed Class as requested herein;

B. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. Declaring that Defendant has committed the violations of law alleged herein;

D. Providing for any and all injunctive relief the Court deems appropriate;

  E. Awarding statutory damages in the maximum amount for which the law provides;

  F. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

  G. Providing for any and all equitable monetary relief the Court deems appropriate;

  H. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

  I. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

  J. Awarding pre- and post-judgment interest to the extent the law allows; and

  K. For such further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

 Dated: November 12, 2020

*/s/ James Chung*
JAMES CHUNG, ESQ.
43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021

Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

*Attorneys for Plaintiffs*

20