UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____
DAVID CHUNG and KBH SPORTS CLUB LLC,
individually and on behalf of all others similarly
situated,

                        Plaintiffs,

          -against-

AMERICAN ZURICH INSURANCE CO.,

                    Defendant.
_____

**MEMORANDUM & ORDER**
**20-CV-5555 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Named plaintiffs KBH Sports Club LLC and David Chung bring this putative class action against Defendant American Zurich Insurance Company on behalf of "all similarly situated gyms, health clubs, health & fitness centers and other businesses." (Am. Compl. (Dkt. 19) at 1.) Plaintiffs allege that their property insurance policy with Defendant (the "Policy") covers business income losses and expenses incurred as a result of the COVID-19 pandemic and their compliance with various public health mandates issued by the State of New Jersey in response to it. Plaintiffs seek a declaratory judgment that their losses are covered by the Policy, a refund of "unearned" premiums previously paid to Defendant, and a discount on future premiums. Pending before the court is Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mot.") (Dkt. 23-1); Pls.' Mem. in Opp. to Mot. to Dismiss ("Opp.") (Dkt. 23-9); Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Reply") (Dkt. 23-10); Def.'s Supplemental Authorities ("Def.'s Supp.") (Dkt. 24).) For the reasons explained below, Defendant's motion to dismiss is GRANTED.

1

I.    BACKGROUND

A.    Facts

The following facts are taken from the Amended Complaint, which the court accepts as true at this procedural posture. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).[1] Chung, a New York resident, owns KBH, a New Jersey limited liability company, which operates a fitness center, 1160 White Horse LLC, doing business as Echelon Fitness, located in New Jersey. (Am. Compl. ¶¶ 97-98; Am. Compl. Ex. A (the "Policy") (Dkt. 19-1) at ECF pp. 16, 89.) Defendant is a corporation organized under the laws of Illinois with its corporate headquarters there. (Am. Compl. ¶ 107; Def. Corporate Disclosure Statement (Dkt. 17).) Plaintiffs obtained an "all-risk" commercial property insurance policy from Defendant, which became effective on January 5, 2020 and renewed on January 5, 2021, and which "covers all risks or loss except for risks that are specifically excluded."[2] (Am. Compl. ¶¶ 2 n.1, 27, 29; Am. Compl. Ex. 3 ("Policy Renewal") (Dkt. 19-3).)

Plaintiffs rely on three provisions which they allege cover their losses: the Business Income provision, the Extra Expense provision, and the Civil Authority provision. (Am. Compl. ¶¶ 31-35.) The Business Income and Extra Expense provisions, together, cover losses and expenses incurred in certain situations where the business is suspended due to direct physical loss of or damage to the property, and the Civil Authority provision covers certain

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

[2] The Policy lists 1160 White Horse LLC/Echelon Fitness as the only insured party. (Policy at ECF p. 16; Am. Compl. Ex. B ("Claim Denial") (Dkt. 19-2) at 1.) Defendants dispute whether Plaintiff Chung is named as an insured and assert that Chung cannot recover under the policy. (Def.'s Mot. at 4, 22-24.) Because the motion is dismissed, the court need not resolve this question.

situations where the business is inaccessible due to a government action in the wake of damage to property *other than* the covered premises (e.g., nearby businesses). (*Id.*; Policy at ECF pp. 107-08.) Plaintiffs assert that they purchased the Policy and paid premiums to Defendant to cover events like COVID-19, and "expect[ed] Defendant to indemnify and compensate [them] for the recent losses incurred." (Am. Compl. ¶ 2; Opp. at 3.)

Beginning in March 2020, the State of New Jersey issued various public health mandates related to the COVID-19 pandemic. (Am. Compl. ¶¶ 20-23.)[3] These included orders directing the temporary closure of all "non-essential" retail businesses to the public. (*Id.* ¶ 23; *see also* Def.'s Mot. Ex. 6 ("N.J. Exec. Order No. 181") (Dkt. 23-8) at 2 (referencing N.J. Exec. Order No. 107).) On or about March 16, 2020, in compliance with the orders, Plaintiffs temporarily ceased operations. (Am. Compl. ¶ 38.) Plaintiffs assert they "lost the right to use the fitness center as a result of the business closure order" and they "were not permitted to operate the business until the business closure orders were lifted." (*Id.* ¶ 47.) During the closure, Plaintiffs ceased billing membership fees and laid off their employees because "[n]o one was allowed to enter the property, including the customers and employees during the crisis." (*Id.* ¶¶ 64, 104-05.) In early September 2020, non-essential businesses were permitted to re-open. (*Id.* ¶¶ 24-25; N.J. Exec. Order No. 181 at 3.) However, New Jersey fitness centers were required to operate at a reduced capacity, and the orders imposed social distancing and face-covering requirements. (Am. Compl. ¶¶ 24, 26; N.J. Exec. Order No. 181 at 4-8.) Echelon Fitness was restored to 25% of maximum capacity on or

---

[3] Plaintiffs reference both New Jersey and New York closure orders and mandates. However, because the named plaintiffs' insured property is located in New Jersey, the court will refer only to the relevant orders that affected Echelon Fitness.

about September 1, 2020, and 35% capacity on February 7, 2021. (Am. Compl. ¶ 85.)

Plaintiffs seek a declaratory judgment that the Policy covers the losses and expenses that they incurred as a result of their compliance with the closure orders. (*Id.* p. 22.) Plaintiffs also allege that no exclusion, including the Virus Exclusion, applies. (*Id.* ¶¶ 69, 126.) Accordingly, Plaintiffs assert that "Defendant is legally bound by the contract to pay all damages caused by the breach of contract." (*Id.* ¶ 129.)

In addition to their coverage claims, Plaintiffs assert that they are owed a "refund of the insurance premium for the business suspension period and partial operation period" and "discounts on future premiums during the business interruption period." (*Id.* ¶ 80, 84.) Due to the limited capacity and operations, Plaintiffs claim that they "paid full premium for the aforementioned business suspension and partial restoration period" despite the fact that "the insurer's exposure to risk of loss was substantially reduced during the Business Closure Order." (*Id.* ¶¶ 86-87.) Additionally, in its January 2021 policy renewal, Defendant raised the insurance by more than $6,000, or more than 30% of the original premium. (*Id.* ¶ 90; Policy at ECF p. 16 (total premium for period beginning Jan. 5, 2020 was $19,677); Policy Renewal at ECF p. 3 (renewal premium for period beginning Jan. 5, 2021 was $24,741).) Plaintiffs seek "partial return of unearned premium paid;" "[t]he premium for the suspended business operation period [] be prorated and adjusted accordingly;" and "[t]he premium for the business restoration period [] be calculated and adjusted" under the theories of unjust enrichment and the common law doctrine of "money had and received." (Am. Compl. ¶¶ 95, 131-42.)

4

### B.    Contractual Provisions

The parties dispute the coverage available to Plaintiffs under three provisions of the Policy: the Business Income provision; the Extra Expense provision; and the Civil Authority Coverage provision. The parties also dispute whether the Policy specifically excludes any covered causes of loss suffered by Plaintiffs here, namely the Virus Exclusion.

The Business Income provision states, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy at ECF p. 107.)

The Extra Expense provision states, in relevant part, that Defendant will pay for:

> necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(*Id.* at ECF pp. 107-08.)

The Civil Authority provision states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra

5

Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at ECF p. 108.)

These provisions refer to a "Covered Cause of Loss" which is defined in the "Causes of Loss – Special Form" as "direct physical loss unless the loss is excluded or limited in this policy." (Am. Compl. ¶¶ 31-32; Policy at ECF p. 116.) Additionally, the Policy coverage is subject to a Virus Exclusion, which provides that Defendant "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy at ECF p. 128.)

## II.   LEGAL STANDARD

### A.   Jurisdiction and Choice of Law

Plaintiffs bring this action on behalf of a putative class of similarly situated individuals and businesses pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). (Am. Compl. ¶¶ 11, 108.) Plaintiffs' proposed class allegedly consists of "[a]ll

6

gyms, health clubs, health & fitness centers and other similarly situated businesses in the United States and its territories or possessions whose claims were denied by Defendant as set forth in the Complaint; and [a]ll gyms, health clubs, health & fitness centers and other similarly situated businesses in the United States and its territories or possession who over-paid insurance premium to Defendant as more fully set forth herein." (*Id.* ¶ 109.) Plaintiffs also propose sub-classes alleged to consist of "insureds whose claims were denied by Defendant in New York and New Jersey during the proposed class period and/or over-paid the insurance premium."[4] (*Id.* ¶ 110.)

Plaintiffs allege that each member of the putative class is a citizen of a different state than Defendant.[5] (Am. Compl. ¶¶ 11, 97-98, 107; Def. Corporate Disclosure Statement.) The parties do not dispute that New York law applies.

## B.   Pleading Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting its analysis, the court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "[M]ere labels and conclusions or formulaic recitation[s] of the elements of a cause of action will not do; rather, the complaint's factual allegations

---

[4] Given this court's dismissal of the complaint, it need not consider the question of class certification.

[5] Chung is a citizen of New York, KBH is a corporation organized under the laws of New Jersey, and Defendant is a corporation organized under the laws of Illinois with its headquarters in Illinois.

must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, "in assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

## III.   PROCEDURAL HISTORY

Plaintiffs initiated this class action on November 15, 2020. (*See* Compl. (Dkt. 1).) On March 4, 2021, Plaintiffs filed an Amended Complaint containing three claims: (1) breach of contract; (2) unjust enrichment; and (3) "money had and received." (Am. Compl. ¶¶ 121-42.) Defendant now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Mot.; Pls.' Opp.; Def.'s Reply, Def.'s Supp.)

## IV.   DISCUSSION

Defendant argues that the losses claimed by Plaintiffs are not covered under the Business Income or Extra Expense provisions because Plaintiffs did not plausibly allege "direct physical loss of or damage to property." (Def.'s Mot. at 8.) Defendant also argues that the claimed losses are not covered by the Civil Authority provision, because Plaintiffs have not alleged "damage to property other than property at the described premises" from "a Covered Cause of Loss within a one-mile radius of the fitness center." (*Id.* at 8, 18.) Moreover, Defendant argues that the Policy's Virus Exclusion precludes coverage under any provision. (*Id.* at 15.) Plaintiffs oppose Defendant's motion, arguing that the provisions

8

cover their losses because "Plaintiffs [and neighboring businesses] lost the exclusive right to enjoy the[ir] propert[ies]for business purposes which equates to damage to property" and that "loss of use is synonymous with damage." (Opp. at 7, 10, 16.) They also argue that the Virus Exclusion does not preclude coverage. (*Id.* at 13.)

For the quasi-contract claims, Defendant asserts Plaintiffs' refund and adjustment claims fail because (1) "Plaintiffs specifically plead the existence of a valid and enforceable contract" which governs the subject matter, (2) "Plaintiffs do not allege that Zurich's retention of the premium is inequitable," and (3) the Defendant's retention of premiums, and refusal to adjust them, is not unjust. (Def.'s Mot. at 20-21.) In response, Plaintiffs assert that (1) the Policy does not preclude quasi-contract claim recovery because it does not address the subject matter at issue; (2) the "premium must be returned if the risk has never been attached"; and (3) "separable risks should be adjusted [where] risk has not run on portions of the policy." (Opp. at 18-22.)

Under New York law, "[a]n insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. of Pittsburgh, Pa. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015). "The initial interpretation of a contract is a matter of law for the court to decide." *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp.*, 25 N.Y.3d at 680. "[T]he test to determine whether an insurance contract is

ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech*." Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326-27 (1996). "However, parties cannot create ambiguity from whole cloth where none exists, because provisions are not ambiguous merely because the parties interpret them differently." *Universal Am. Corp.*, 25 N.Y.3d at 680. "While the rights and obligations of parties under insurance contracts should be determined by the specific language of the policies, if the language of the policy is susceptible of two reasonable meanings, the parties may submit extrinsic evidence of their intent at the time of contracting." *Newin Corp. v. Hartford Acc. & Indem. Co.*, 62 N.Y.2d 916, 919 (1984). "It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp.*, 225 F.3d at 276. If the policyholder carries that burden, then the "insurer bears the burden of proof [to show] that an exclusion in the policy applies to an otherwise covered loss." *Id.* at n.1.

## A.   Coverage

### 1.   Business Income and Extra Expense Coverage

Plaintiffs assert coverage under the Business Income and Extra Expense provisions due to the "direct loss of use of the premises caused by the communicable disease, pandemic and the resulting business closure order." (Am. Compl. ¶¶ 31-35, 46.) This claim is materially identical to that addressed by this court in *DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 320-22 (E.D.N.Y. 2021). Because the court finds the Plaintiffs' Business Income and Extra Expense policy terms to have the same meaning as those in the *DeMoura* policy, and because Plaintiffs fail to address nor attempt to distinguish *DeMoura*, Plaintiffs' "loss of use" claim under these provisions necessarily fail.

To obtain Business Income and Extra Expense coverage, the Policy states "the actual loss . . . must be caused by direct physical loss of or damage to property." (Policy at ECF pp. 91, 107-08.) The Policy here, like in *DeMoura*, does not define "direct physical loss of or damage to property." (Am. Compl. ¶ 42); *DeMoura*, 523 F. Supp. 3d at 320-21. Plaintiffs claim that "[t]he pandemic and the resulting Business Closure Order prevented Plaintiffs from the use of the premises which is equivalent to 'physical loss' or 'damage to property.'" (Am. Compl. ¶ 58.) In other words, Plaintiffs claim that "be[ing] unable to use the property for the intended commercial purpose" is a "direct loss of use [which] must be covered" under the Policy. (*Id.* ¶ 56.)

In *DeMoura*, the court discerned the unambiguous meaning of the contract based on the dictionary definitions of relevant terms;[6] other portions of the *DeMoura* policy at issue; and New York case law, and held that the phrase "direct physical loss of or damage to property" requires "real, tangible damage to or loss of the property." *DeMoura*, 523 F. Supp. 3d at 321. Thus, "loss of use" of a property alone is not covered. *Id.* at 321-22.[7]

---

[6] "Taken together, the plain meaning of 'direct physical loss or damage' includes loss or damage that is 'immediate,' 'real,' and 'tangible.'" *DeMoura*, 523 F. Supp. 3d at 321.

[7] The *DeMoura* decision is consistent with a broad consensus of district court decisions addressing the same or similar questions. *See, e.g.*, *Deer Mountain Inn LLC v. Union Ins. Co.*, No. 120-cv-0984 (BKS) (DJS), 2021 WL 2076218, at *7 (N.D.N.Y. May 24, 2021) (collecting cases); *Poughkeepsie Waterfront Development, LLC v. Travelers Indemnity Co. of America*, No. 20-cv-4890 (KMK), 2021 WL 4392304, at *1 (S.D.N.Y. Sept. 24, 2021) (collecting cases); *WM Bang LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-4540 (KMK), 2021 WL 4150844, at *3 (S.D.N.Y. Sept. 13, 2021) (collecting cases); *see also Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 179 (S.D.N.Y. 2020), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021) (collecting cases).

Plaintiffs here, as in *DeMoura*, also make a variety of structural arguments to support their definition, asserting that the policy is ambiguous and must be interpreted in favor of the insured. (Opp. at 12.) However, "[t]he lack of a definition of a word or phrase in a contract, alone, does not make the language ambiguous, especially if its plain meaning is readily discernible." *DeMoura*, 523 F. Supp. 3d at 320. The dictionary, New York case law, and the context of the Business Income and Extra Expense provisions make clear that the Policy unambiguously requires real, tangible damage to or loss of the property to trigger Business Income and Extra Expense Coverage. *Id.*; *see also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 21-80-CV, 2021 WL 6109961, at *3 (2d Cir. Dec. 27, 2021). That the Business Income (And Extra Expense) Coverage Form does not define "direct physical loss," "damage to property," nor any of the individual terms, (*see* Am. Compl. ¶ 42), does not make it "ambiguous." Because Plaintiffs have failed to allege that such harm occurred, they have not met their burden to plead coverage for their losses under the Business Loss or Extra Expense provisions.

## 2.   Civil Authority Coverage

Plaintiffs also assert coverage under the Civil Authority provision because both Plaintiffs' business and "many businesses within one mile of Plaintiffs suffered the same property damage" from "the business closure orders." (Am. Compl. ¶¶ 63-68.) Defendant asserts Plaintiffs "cannot allege entitlement to Civil Authority coverage because a Covered Cause of Loss did not result in 'damage to [nearby] property.'" (Def.'s Mot. at 24.) Here, the Civil Authority provision requires a "Covered Cause of Loss," defined elsewhere in the Policy as "direct physical loss," to "cause[] damage to property other than property at the described premises." (Policy at ECF p. 108, 116; Am. Compl. ¶ 32.)

12

Because a Covered Cause of Loss requires direct physical loss, the Civil Authority provision should be read consistent with the Business Income provision, which the court has already found to require real, tangible damage. *See supra,* Section IV.A.1.; *see also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 21-80-CV, 2021 WL 6109961, at *3 (2d Cir. Dec. 27, 2021) ("coverage under the Civil Authority provision . . . requires a "Covered Cause of Loss" damaging property, [and] is contingent on . . . physical loss"). Therefore, Plaintiffs have not sufficiently pled that the Civil Authority provision covers their alleged losses or expenses, and the court need not consider the additional arguments as to physical conditions or access.

### 3.   Virus Exclusion

Even if definitional ambiguity did exist, the Policy's Virus Exclusion would apply so as to exclude coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy at ECF p. 128.) The parties dispute whether this precludes coverage here. Plaintiffs implausibly claim either that the virus did not cause the losses (rather, the closure orders did), or at least was not the proximate cause of the losses, but neither suggestion is persuasive. *See WM Bang*, 2021 WL 4150844, at *6 ("Courts across the country have held that similar virus exclusions preclude coverage for property insurance claims arising from the COVID-19 pandemic."); *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, No. 20-cv-8452 (JMF), 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021) ("COVID-19 is the 'efficient proximate cause' of any business losses resulting from government restrictions imposed in an effort to contain the virus."). Thus, Plaintiffs have failed to show that the Virus Exclusion provision is inapplicable.

## B.    Quasi-Contract Claims

Where, as here, there is a valid contract between the parties respecting the matter at issue, Plaintiffs are precluded from recovering for any quasi-contract claims under New York law. *See Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987)); *Gagasoules v. MBF Leasing LLC*, No. 08-cv-2409 (ADS)(ARL), 2009 WL 10709179, at *8 (E.D.N.Y. Feb. 2, 2009) (citing *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) and *Shovak v. Long Island Comm. Bank*, 50 A.D.3d 1118, 1120 (2d Dep't 2008)) ("[A]s with other quasi-contract theories of liability, [claims for unjust enrichment and money had and received] cannot be maintained where there is an express agreement between the parties."); *Statler, D.C. v. Dell, Inc.*, 775 F. Supp. 2d 474, 485 (E.D.N.Y. 2011) ("Where a valid contract governs the subject matter in a lawsuit, a plaintiff may not recover in quasi-contract, and it is appropriate to dismiss a claim for unjust enrichment.").

Plaintiffs do not dispute the contract's validity. Indeed, they rely on the Policy to argue for enforcement of its alleged coverage obligations. (Am. Compl. ¶¶ 123, 125 (stating "[t]he Policy is valid and enforceable contract" and "in full force and effect").) However, they argue that "the Policy does not address the subject matter at issue" nor "define the rights of the parties under the circumstances described in the Amended Complaint" because "[t]he foregoing circumstances was [sic] not foreseeable and not contemplated by either party." (Opp. at 22.) The Policy does, however, state the agreed amount of premium to be paid to Defendant by Plaintiffs and potential grounds for refund of that

14

premium.[8] (Policy at ECF p. 16, 23.) Moreover, the parties agreed that "insurance premiums are not retroactively adjusted simply because fewer or more claims than expected materialized during the policy period." (Opp. at 24.) Thus, contrary to Plaintiff's assertion, "the subject matter at issue" is indeed governed—and excluded—by the parties' contract.

Because Plaintiffs have failed to allege that the contract in dispute is invalid, nor establish that its claims are not addressed by the terms of that Policy, the unjust enrichment and money had and received claims must be dismissed. *See, e.g., Dabrowski v. Abax Inc.*, 64 A.D.3d 426, 427 (1st Dep't 2009) ("The quantum meruit and unjust enrichment causes of action also should have been dismissed because they arise out of subject matter covered by express contracts and the validity of the contracts are not in dispute.").

## C.   Class Claims

Where "the Court has found that all of Plaintiff[s'] individual claims for damages and declaratory relief must be dismissed, Plaintiff[s'] class claims must be dismissed as well." *Deer Mountain Inn*, 2021 WL 2076218, at *12. Accordingly, Plaintiffs' class claims are dismissed.

---

[8] In support of their refund request of unearned premium and a discount on future premium, Plaintiffs cite N.Y. Ins. Law § 3428(a) (McKinney 2000) and New Jersey Department of Banking and Insurance ("DOBI") Bulletin 20-22. (Am. Compl. ¶¶ 88-92.) However, neither of these provisions apply. First, N.Y. Ins. Law § 3428(a) deals with policies "canceled or otherwise terminated by the insured," which is not the case here. (Am. Compl. ¶¶ 92 n.7, 123.) Second, to the extent that the DOBI Bulletin provides an avenue of relief for KBH, it does not do so by giving rise to a breach of contract claim.

15

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED. Plaintiff's Amended Complaint is DISMISSED with prejudice. The Clerk of the Court is respectfully directed to enter judgment for Defendant and close the case.

SO ORDERED.

Dated:      Brooklyn, New York
            December 29, 2021

                                        /s/ Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge